IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-CR-00140-RJC-DSC

| | |
|---|---|
| USA | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| QUINTON OSHUMOND LITTLEJOHN | ) |
| | ) |

**THIS MATTER** is before the Court upon the defendant's post-verdict Rule 29 Motion for a Judgment of Acquittal, or in the alternative Rule 33 Motion for a New Trial,[1] (Doc. No. 57), and the government's response in opposition, (Doc. No. 58).

I. BACKGROUND

The defendant proceeded to jury trial on charges of possessing a firearm as a felon (Count One), possessing 28 grams or more of a mixture and substance containing a detectable amount of cocaine base with intent to distribute (Count Two), and possessing a firearm in furtherance of a drug trafficking offense (Count Three).[2] (Doc. No. 1: Indictment). At the close of the government's proof, the Court

---

[1] The defendant also filed a Rule 45 Motion for Extension of Time, (Doc. No. 56), to submit his post-verdict Rule 29 motion. However, because he filed the instant Rule 29 motion within 14 days of the verdict, the extension motion is moot.

[2] Prior to trial, the Court denied the defendant's Motion to Suppress, (Doc. No. 28; Motion; Doc. No. 34: Order), finding that he had not established a privacy interest in the vehicle searched. On the eve of trial, the defendant filed another Motion to Suppress, (Doc. No. 39), renewing his challenge of the vehicle search and a third Motion to Suppress, (Doc. No. 51), objecting to the introduction of statements he made while in custody. At the beginning of the trial, the Court orally denied the

denied the defendant's motion for judgment of acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure. The defendant called two expert witnesses and renewed his Rule 29 motion as the close of his evidence, which the Court denied. The jury found the defendant guilty of each count, including the 28-gram drug quantity. (Doc. No. 53: Verdict).

II. DISCUSSION

The instant motion seeks judgment of acquittal under Rule 29, or, in the alternative, a new trial under Rule 33. Under Rule 29, a guilty verdict must be sustained "if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by substantial evidence," that is, evidence which a reasonable finder of fact could accept as adequate to support the defendant's guilt beyond a reasonable doubt. United States v. Burfoot, 899 F.3d 326, 334 (4th Cir. 2018). Under Rule 33, a new trial can be ordered if required in the interest of justice, but "a jury verdict is not to be overturned except in the rare circumstance where the evidence weighs heavily against it." Id. at 340 (internal quotation marks omitted).

A. Sufficiency of the Evidence

The defendant accuses the government of playing a "shell game" with the evidence, which he claims failed to prove knowing possession of the firearm and cocaine base at issue. (Doc. No. 57: Motion at 5-9). The nature of the case did call

---

renewed vehicle-search motion, and the statement motion became moot when the government did not seek to introduce that evidence.

for the government to present circumstantial evidence from which the jury could infer constructive possession of the drugs and gun, but that evidence was sufficient for a reasonable juror to accept as adequate to support the defendant's guilt beyond a reasonable doubt on each count.

In light most favorable to the government, the trial evidence tended to show that on September 21, 2017, U.S. Probation and local police officers arrived at the residence the defendant shared with others in Charlotte, North Carolina, to conduct a search according to the conditions of his federal supervised release.[3] (Doc. No. 65: Trial Tr. Vol. I at 4). In his bedroom, they located an Alcatel flip phone, which he admitted was his, on a nightstand with the defendant's North Carolina ID. (Id. at 8). Text messages on the Alcatel phone indicated drug trafficking to the probation officer who reviewed them on the scene.[4] (Id. at 15). Rubber gloves, which another probation officer said are typically used in drug distribution, were found in the drawer of the nightstand. (Id. at 34). A Samsung smart phone was found on a dresser in the bedroom. (Id. at 8, 10). The defendant denied that phone was his, but it displayed his picture. (Id.). Text messages on the Samsung smart phone sent and received on the days leading up to the search similarly indicated drug trafficking to

---

[3] It is not disputed that Charlotte, North Carolina, is within the Western District of North Carolina.

[4] In his opinion, references to "soft" could mean cocaine, "gas" could mean marijuana, and "40" could mean the amount of drugs requested or provided. (Doc. No. 65: Trial Tr. Vol. I at 15).

the police officer who forensically extracted them.[5] (Doc. No. 66: Trial Tr. Vol. II at 352-55). Over $4,000 in cash, mostly $20 bills, was found in two jackets in the defendant's closet, which indicated drug trafficking to the officer who logged items from the search because drug sales are commonly in $20 amounts. (Doc. No. 65: Trial Tr. Vol. I at 71-78).

Local police obtained a search warrant for the house and three cars parked on the property. (Id. at 21, 54). On top of the refrigerator in the kitchen, they found two digital scales, one with white residue and one with green flakey material, like marijuana, along with boxes of sandwich bags, which a police officer testified are commonly used in drug packaging. (Id. at 79-83). In a bedroom, they found a container with marijuana in tied-off corners of bags similar to those found in the kitchen, which also indicated to that officer packaging for distribution.[6] (Id. at 86-87).

Residents at the house provided keys for two of the cars, a Cadillac and a Nissan, neither of which contained contraband. (Id. at 88-89). However, police were told no one at the house had a key to a dark colored Chevrolet Malibu, which was parked behind the Nissan, blocking it in. (Id. at 53, 90, 94). A police officer spoke by

---

[5] He thought a reference to "That shit crumble, wet" could relate to crack cocaine not cooked correctly. (Doc. No. 66: Trial Tr. Vol. II at 353-54). There were also references to "I need a g 4 50," "I owe you Ten," "Got 40," "Got 50," and "Got 75." (Id.).

[6] Two other corner bags of marijuana were found in a pair of pants in a bedroom believed to be used by the defendant's brother. (Doc. No. 65: Trial Tr. Vol. I at 87).

4

telephone with the defendant's mother, who had left while the search warrant was being obtained. (Id.). She said her niece had rented the car, but she would not provide the person's name or phone number. (Id. at 90-92). A firefighter used a tool to unlock the Malibu so police could search it. (Id. at 97).

In the center console, an officer found a digital scale, a bag of suspected cocaine base, a .357 caliber revolver,[7] and another Samsung smart phone.[8] (Id. at 99-100). There were boxes of surgical gloves in the back seat and in the trunk. (Id. at 100-01). A Western Union receipt in the glove box showed the defendant had wired money on September 12, 2017, at a location within 3 miles of the residence. (Id. at 187, 191). A photograph extracted from the smart phone in the car showed the defendant driving what the jury could have reasonably concluded was the same car. (Id. at 127-29; Doc. No. 66: Trial Tr. Vol. II at 316-18; Gov't Ex. 34-d). A photograph taken on September 12, 2017, extracted from the smart phone in the bedroom was similar. (Doc. No. 66: Trial Tr. Vol. II at 347-48; Gov't Ex. 35-c). Like the phone in the bedroom, the phone in the car contained text messages dated in

---

[7] The gun had been reported stolen. (Doc. No. 65: Trial Tr. Vol. I at 102).

[8] The phone number for the white Samsung smart phone in the car matched the phone number for the silver Samsung found in the defendant's bedroom, indicating that the SIM card from one had been moved to the other. (Doc. No. 66: Trial Tr. Vol. II at 303-04, 312, 344-45). The police officer who forensically examined the phones testified that the last call on the white Samsung and the first call on the silver Samsung was on September 5, 2017, but the white Samsung phone could still be used with wifi service even without a SIM card. (Id. at 314, 346).

5

the weeks leading up to the search indicating drug trafficking.[9] The bag from the console contained 28.3 grams of cocaine base. (Doc. No. 65: Trial Tr. Vol. I at 161, 165). DNA material lifted from the grip of the gun matched the defendant. (Id. at 212-13).

Counsel for the defendant put on a vigorous defense, including penetrating cross-examination and expert testimony, to challenge the government's case. Even so, the evidence did not weigh heavily against the jury's verdict. For example, a witness confirmed on cross-examination that he saw the defendant driving a black Chevrolet Impala on September 4, 2017. (Id. at 185). However, a police officer who owns a Chevrolet Malibu and drives a Chevrolet Impala for work testified that their body styles are similar. (Id. at 198-200).

Cross-examination highlighted that no latent fingerprints were left on the gun, ammunition, or bag of drugs, but the examiner also testified that guns have only an 8% success rate of finding usable prints. (Doc. No. 66: Trial Tr. Vol. II at 255, 269-70). A DNA expert testified it was possible that the defendant's DNA was transferred from another part of the car to the grip by the way the police handled the gun. (Id. at 394-96). On the contrary, the police DNA expert testified it was unlikely that enough of the defendant's DNA could be transferred that way and still result in the major profile found on the grip. (Doc. No. 65: Trial Tr. Vol. I at 222). A forensic chemist testified that when she weighed the cocaine base it was 26.2

---

[9] References were made to "I'm cooking dope," "Bae we go make this harder n cooked all the way dwn," and "40." (Doc. No. 66: Trial Tr. Vol. II at 336-37, 340-41).

6

grams, but she admitted it could have lost weight in the 15 months since it was tested at the police laboratory. (Doc. No. 66: Trial Tr. Vol. II at 417). The police chemist testified that some of the substance is consumed in the testing process and that water, which is part of crack cocaine, evaporates over time, lessening the weight. (Doc. No. 65: Trial Tr. Vol. I at 168-69).

The jury was free to resolve these and other contradictions in the testimony in the government's favor. Thus, the defendant is not entitled to a judgment of acquittal or a new trial because substantial evidence supports the jury's verdict.

B. Legal Issues

The defendant alleges numerous factual and legal errors he claims require a new trial in the interest of justice. Several relate to the sufficiency of the evidence and the practical reality that a circumstantial case is presented through a number of witnesses, requiring the trier of fact to weigh the significance of details which could be innocent or inculpatory. As detailed above, the government presented sufficient evidence for a rational juror ultimately to conclude the defendant was guilty beyond a reasonable doubt of the crimes charged.

The defendant again claims the search should have been suppressed, but again fails to allege any facts which would establish a reasonable expectation of privacy in the Malibu. Therefore, he is not entitled to a judgment of acquittal or new trial on this claim for the reasons stated in the prior Order, (Doc. No. 34).

The defendant contends that Kenate Funderburk should not have been allowed to testify, that the government should not have been allowed to bolster his

7

alleged perjured testimony, and that with the real purpose of his testimony was to let the jury know about a separate gun possession. (Doc. No. 57: Motion at 11). As detailed above, Funderburk testified that he saw the defendant driving an Impala on September 4, 2017, at a gas station. (Doc. No. 65: Trial Tr. Vol. I at 182-83). A police officer testified that Funderburk had given him that same information and that those cars have similar body styles. (Id. at 196-99). Accordingly, there is no evidence that Funderburk lied and the jury was free to decide whether he was mistaken about the type of car or whether the defendant was driving a different car. Prior to his testimony, however, the Court prohibited the witness from mentioning any bad act. (Id. at 179-80). In response to the question, "At some point did the defendant leave the gas station?" Funderburk said, "Yeah, after he got to shooting a little bit." (Id. at 184). The prohibited response was not elicited by the government's question and the government never mentioned the alleged shooting again. The defendant did not request a limiting instruction. (Id. at 198, 231; Doc. No. 66: Trial Tr. Vol. II at 238). The Court instructed the jury at the end of the case that the defendant was not on trial for any act not alleged in the indictment as a crime. (Doc. No. 66: Trial Tr. Vol. II at 441). Thus, the Court finds a new trial is not required in the interest of justice on this claim. See United States v. Saint Louis, 889 F.3d 145, 155 (4th Cir. 2018) (jury presumed to follow instruction regarding inadvertent admission of potentially prejudicial remark).

Next, the defendant asserts that the government should not have been allowed to introduce "old and unconnected text messages" and that the government

8

improperly elicited statements from police officers about their personal feelings. (Doc. No. 57: Motion at 11-12). First, the Court excluded text messages that were remote or involved references to marijuana. (Doc. No. 66: Trial Tr. Vol. II at 223-33). Second, what the defendant describes as officers' "feelings" were opinions about items commonly used in drug trafficking and terms used in text messages that could be drug related, based on the officers' training and experience. The defendant did not object to such testimony, but tested it on cross-examination.[10] Therefore, the jurors properly considered that evidence in light of their experience, reason, and common sense and in light of the instruction that they were not required to accept opinion testimony. (Doc. No. 66: Trial Tr. Vol. II at 444-45); See United States v. Galloway, 749 F.3d 238, (4th Cir. 2014) (no plain error where experienced agents testified about coded language and methods used by drug traffickers).

Finally, the defendant complains that "on or about" was misapplied in this case and denied him a fair trial. (Doc. No. 57: Motion at 13). His argument is built on the premise that because no key to the Malibu as provided to the police on the day of the search, September 21, 2017, that the defendant could not have possessed the drugs and gun on the day alleged in the indictment because he had no ability to exert control over them. (Id. at 5).

---

[10] For example, as detailed above, Jason Kemp testified that based on his experience as a U.S. Probation officer, the term "soft" is typically used by people in drug trafficking for powder cocaine and that "40" is usually a $40 amount. (Doc. No. 65: Trial Tr. Vol. I at 15). On cross-examination, he admitted that no powder cocaine was found on the property and that he did not know what type of drug the $40 amount might involve. (Id. at 24-25).

9

As detailed above, the defendant's mother left the residence after the officers arrived but were awaiting a search warrant for the whole house and cars on the property and would not provide the name of the niece who was purportedly out of town with the key. (Doc. No. 65: Trial Tr. Vol. I. at 90-92). The jury could have discounted the unavailability of a key by reasonably concluding that the defendant's mother took the key with her or simply that the officers did not find the key during their search. The jury could also have reasonably concluded that recent photographs and text messages up to the day of the search showed the defendant's control over the vehicle and its contents and his intent to distribute the cocaine base on a date reasonably near the date alleged. That conclusion would be strengthened by other evidence found on September 21, including digital scales in the house and in the car, rubber gloves in his bedroom and in the car, the large amount of cash in his closet in denominations consistent with typical drug transactions, and the presence of his DNA on the gun. Therefore, the defendant is not entitled to a new trial on this claim.

III.  CONCLUSION

Having considered the defendant's motion for judgment of acquittal or new trial under Rules 29 and 33 of the Federal Rules of Criminal Procedure, the Court finds that substantial evidence supports each count of conviction and that a new trial is not in the interest of justice.

**IT IS, THEREFORE, ORDERED** that the defendant's Rule 29 Motion for a Judgment of Acquittal, or in the alternative Rule 33 Motion for a New Trial, (Doc. No. 57), is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's Motion for Extension of Time, (Doc. No. 56), is **MOOT.**

Signed: September 18, 2019

Robert J. Conrad, Jr.
United States District Judge